IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-100-BO

ANDREA CENNINGTON, )
    *Plaintiff*, )
 )
v. ) ORDER
 )
CHRISTINE WORMUTH, Secretary, U.S. )
Department of the Army, )
    *Defendant*. )

This cause comes before the Court on defendant's motion to dismiss [DE 18] plaintiff's complaint for failure to state a claim. A hearing on this motion was held before the undersigned via video conference on July 11, 2022. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Plaintiff is a Black female who worked as a clinical social worker for the Department of the Army. She was born in 1971, is a veteran, and she states that she is disabled because she suffers from Attention Deficit Hyperactivity ("ADHD") and Post Traumatic Stress Disorder ("PTSD"). Plaintiff allegedly began to experience discriminatory treatment in her workplace around 2015. Co-workers allegedly made racially and sexually charged comments in plaintiff's presence, such as jokes about slaves, a joke about plaintiff being an angry black woman, and insensitive comments about the smell of Puerto Rican people.

*Factual Allegations Prior to 45 days from Plaintiff's Contact with the EEO*

On July 21, 2016, plaintiff told a supervisor, Captain Cochran that she felt emotionally unsafe around certain co-workers. In December 2016, a co-worker allegedly told plaintiff she was difficult to work with because of plaintiff's inability to stay on task due to her ADHD and her introverted personality. Plaintiff found this to be discriminatory. On March 27, 2017, plaintiff

emailed two supervisors to tell them that she did not feel comfortable during some meetings because of racially stereotypical comments being made around her. Plaintiff was frustrated that her co-workers found her angry and unapproachable.

Plaintiff alleged that she requested reasonable accommodations for her ADHD and PTSD on March 30, 2017. Plaintiff requested that the staff should be provided sensitivity training, that plaintiff should be given breaks, that plaintiff be excused from unorganized meetings, that non-work-related conversations should be moved out of the workplace or meeting areas, and permission to telework in limited circumstances. Plaintiff alleged that her medical conditions were exacerbated by what she perceived to be a hostile work environment. Plaintiff states, without providing details, that the defendant failed to implement these requests and that "[th]e way Captain Cochran handled the reasonable accommodation request was not done in good faith." Amended Complaint ¶ 46.

Plaintiff alleged that, beginning in June 2017, three co-workers repeatedly made false and damaging statements about plaintiff to new staff members, including calling her a liar. Plaintiff allegedly felt harassed about three days per week. In June 2017, management reassigned an intern from plaintiff to a different therapy group. At an unknown time before July 20, 2017, plaintiff allegedly filed a complaint of discrimination. On January 18, 2018, a non-clinical peer allegedly falsely reported that plaintiff had falsified medical documentation. On February 8, 2018, two colleagues declined to assist plaintiff. Plaintiff claims they could have helped her. Around February 19, 2018, unknown persons were allegedly responsible for improperly reporting plaintiff's outside training to Dr. Lesica, a supervisor.

On February 23, 2018, plaintiff allegedly spoke to Capt. Cochran to express her concerns about harassment. Cochran encouraged plaintiff to speak to her coworkers more. Plaintiff alleged

2

that he was not properly addressing the situation. Sometime in March 2018, a coworker called plaintiff a liar in front of other peers and Cochran did not intervene. On March 6, 2018, plaintiff alleged that Cochran blamed plaintiff for miscommunications about scheduling with clients. On March 27, 2018, Cochran verbally reprimanded plaintiff for missing meetings, which plaintiff perceived to be retaliatory. Sometime in March 2018, plaintiff alleges that there was a rumor being spread that she was suicidal.

*Factual Allegations 45 days from Plaintiff's Contact with the EEO*

On April 9, 2018, plaintiff left work early crying because she was allegedly subject to harassment and reprisal. Plaintiff told Dr. Lesica that she would be using Family Medical Leave. Plaintiff alleged that she was then placed on the Impaired Provider list in April 2018 without being notified as a result of missing too many days of work and her anxiety and depression's impact on her ability to do her job. Plaintiff argues that she could not have been an impaired provider, because plaintiff was not attending work and thus not providing treatment. Plaintiff alleged that the committee did not follow the proper procedure in voting to place her on this list, and stated that the committee acted recklessly and pretextually. On April 26, plaintiff learned that she had received a rating of unacceptable on one of the metrics of her performance evaluation. She alleges that this was unwarranted.

On May 10, 2018, plaintiff contacted Equal Employment Opportunity ("EEO") about to report harassment. On July 26, plaintiff was assigned to a new department at Fort Bragg. Plaintiff alleges that the reassignment was not properly conducted, and it was retaliatory. On August 21, 2018, plaintiff filed a formal complaint of discrimination with the EEO. On February 20, 2019, plaintiff requested a hearing before the Equal Employment Opportunity Commission ("EEOC"). On December 2, 2020, plaintiff received a final Agency Decision.

3

Plaintiff filed this suit on March 1, 2021. Plaintiff alleges claims of employment discrimination in violation of (Count I, Count III, Count IV) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and (Count II) the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* A hearing on the motion to dismiss was held before the undersigned via video conference on July 12, 2022 in Elizabeth City, North Carolina.

## DISCUSSION

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The complaint must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

**Exhaustion of Administrative Remedies**

4

In order to file a Title VII or Rehabilitation Act claim of discrimination against the federal government, a plaintiff must first exhaust her administrative remedy. *See* 29 C.F.R. § 1614.105(a)(1*)*. In cases such as this, the plaintiff must contact an Equal Employment Opportunity Counselor to report discrimination within 45 days of the alleged action in order to initiate the administrative exhaustion process. *See* 29 C.F.R. § 1614.105(a)(1*); Kobraei v. Alexander*, 521 Fed. Appx. 117, 118 (4th Cir. 2013); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509, 513 (4th Cir. 2005); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "[A]dministrative exhaustion is a condition precedent to suit that functions like a statute of limitations." *Wilkinson v. Rumsfeld*, 100 F. App'x 155, 157 (4th Cir. 2004). Claims about conduct that was not reported to an EEO Counselor within 45 days will be considered not exhausted. *Murphy v. West*, 172 F.3d 863, 1999 WL 64284 at *3 (4th Cir. 1999).

Plaintiff in this case contacted an EEO counselor on May 10, 2018 to report discrimination that allegedly started in 2015. Plaintiff had failed to initiate EEO contact to report any conduct occurring prior to March 26, 2018. Failure to exhaust administrative remedies concerning a Title VII claim or claim of disability discrimination deprives federal courts of subject matter jurisdiction over the claim. *See Cruthirds v. Miller*, No. 5:13-CV-849-BO, 2015 WL 507466, at *3 (E.D.N.C. Feb. 6, 2015), *aff'd*, 600 F. App'x 146 (4th Cir. 2015); *Cruthirds v. Lacey*, No. 5:14-CV-00260-BR, 2017 WL 3754764, at *3 (E.D.N.C. Aug. 30, 2017). Plaintiff has not demonstrated that she contacted an EEO counselor within 45 days of any specific incidence of discrimination happening before March 26, 2018. Accordingly, the Court finds that claims relating to any allegations between June 2015 and March 25, 2019 are dismissed as not exhausted. *See West*, 1999 WL 64284 at *3.

**Count I: Title VII racial discrimination**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... race." 42 U.S.C. § 2000e-2(a)(1). "An unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* at § 2000e-2(m). To state a claim for employment discrimination, plaintiff must plausibly allege that her employer took adverse employment action against plaintiff because of her race.[1] *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Plaintiff must allege that "that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives[.]" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013).

Plaintiff's allegations of racial discrimination between March 26, 2018 and the filing of this suit lack sufficient facts to nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiff alleges that she was reprimanded for missing meetings, that she was placed on an impaired provider list, that she received an unacceptable on her performance evaluation, and that she was reassigned to a different department. On April 9, 2018, plaintiff states that she left work early due to "ongoing harassment/reprisal," Amended Complaint ¶ 80. But plaintiff does not provide specific facts or examples. On July 23, 2018, Dr. Lesica allegedly stated that if plaintiff came back to his department he would quit. Plaintiff has not provided any facts that allow racial motivation to be inferred from any of the aforementioned actions. Accordingly, plaintiff has failed to state a Title VII racial discrimination claim.

**Count II: harassment and disparate treatment based on disability**

---

[1] "[A]n employment discrimination plaintiff need not plead a *prima facie* case of discrimination . . . . to survive respondent's motion to dismiss." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002).

6

To state a claim of discrimination based on disability in violation of the Rehabilitation Act plaintiff must allege that she was a qualified individual with a disability and that her federal employer discriminated against her because of that disability. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001). Discrimination includes "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of the applicant." 42 U.S.C. § 12112(a). Discrimination also includes

> [N]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

*Id.* § 12112(b)(5)(A).

To prevail on a disability discrimination claim, plaintiff must show that " (1) she is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of the disability." *Perry v. Computer Scis. Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011). A disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

Plaintiff alleges that she is disabled because she has PTSD and ADHD. Plaintiff alleges she was otherwise qualified for the position. Plaintiff alleges that she suffered the following adverse employment action: reprimanded for missing meetings, that she was places on an impaired provider list, that she received an unacceptable on her performance evaluation, and that she was reassigned to a different department. Even if plaintiff had plausibly alleged an adverse employment action, plaintiff has not stated facts that leads the Court to conclude that any of the stated action was taken against her "solely on the basis of [her] disability." *Perry*, 429 F. App'x at 220.

7

Plaintiff offers no facts that lead to the conclusion that she was reassigned to a new department, reprimanded for missing meetings, or received a poor performance evaluation because of her disabilities. Plaintiff states that she was placed on the impaired providers list for missing work in part due to her mental health issues, which had "an increasingly negative impact on her ability to perform the assigned tasks necessary in fulfillment of her position as a Clinical Social Worker." Amended Complaint ¶ 89. Plaintiff also states she was placed on the list for missing too many days of work, when plaintiff states that she did not go to work in part because she was upset about her working conditions. Even if, without deciding, plaintiff was placed on the list solely because of her disability, plaintiff does not allege sufficient facts to show that being placed on the list is an adverse employment action.

An adverse employment action would "dissuade[] a reasonable worker from making or supporting a charge of discrimination[.]" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Without giving the Court any context or elaborating beyond unclear licensing implication, plaintiff only recites the legal standard: "Placement in the IHPC which could have licensing implications would dissuade a reasonable employee from engaging in protected activity." Amended Complaint ¶ 83. The Court is not obligated to take plaintiff's legal conclusions as fact. *Philips*, 572 F.3d at 180.

Plaintiff also claims that defendant denied plaintiff reasonable accommodations for her ADHD. Plaintiff requested that the staff should be provided sensitivity training, that plaintiff should be given breaks, that plaintiff be excused from unorganized meetings, that non-work-related conversations should be moved out of the workplace or meeting areas, and permission to telework in limited circumstances. Plaintiff provides little information about her ADHD and how its symptoms would be lessened by being excused from personal conversations or unorganized

8

meetings. Plaintiff does not provide any the Court with any factual basis by which to find that these requested accommodations were reasonable. Accordingly, the Court finds that plaintiff has failed to state a disability discrimination claim.

### Count III: Title VII gender harassment and disparate treatment

To show that the harassment was based on protected status, plaintiff must show that "but for" her protected status, she would not have been discriminated against. *Gilliam v. S. Carolina Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2003). "Disparate treatment" is discrimination where the "employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 (1977).

Other than one comment, where a co-worker called plaintiff an angry black woman, plaintiff offers no factual information that she was subjected to less favorable treatment because of her gender, that she was singled-out because of her gender, or that people who were not female received privileges. Plaintiff only includes conclusory statements in her amended complaint which are not sufficient to state a claim. Accordingly, plaintiff has failed to state a gender discrimination claim.

### Count IV: Title VII reprisal

To state a Title VII retaliation claim, a "plaintiff must prove (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). To prevail, plaintiff would have to show that "the desire to retaliate was the but-for cause of the challenged employment action." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir.

9

2017) (citations omitted) (quotations omitted). Employers are prohibited from taking "adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)). Adverse actions in the retaliation context are those that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006). However, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68.

Plaintiff alleges that co-workers called her a liar at unspecified times beginning in June 2017. Plaintiff states that she believes that co-workers spoke negatively about plaintiff. Amended Complaint ¶ 59. Plaintiff alleges that Dr. Lesica allowed this to happen, but plaintiff fails to allege that any supervisor or anyone with any authority over plaintiff's work retaliated against plaintiff. Plaintiff was re-assigned to another department, but the facts appear to lead to the conclusion that it was because plaintiff's supervisors were unhappy with her performance. Plaintiff states that Captain Cochran, a member of management, stated that plaintiff's colleagues were not comfortable working with plaintiff directly in part because she had burned all of her bridges.

Plaintiff alleges that being placed on the impaired provider list was retaliatory. A supervisor listed several reasons for placing her on the list, including plaintiff's struggles with her mental health, her diminished ability to perform her job function, her inability to work well with others, and her "repeated unsubstantiated claims that she is being discriminated against." Amended Complaint ¶ 89. First, the complaint does not make it clear that plaintiff's protected activity (making discrimination claims to the EEO) was the but-for cause of the placement on the list. *See*

10

*CavaMezze Grill, LLC*, 858 F.3d at 900. Plaintiff's supervisor listed many independent and sufficient reasons why plaintiff was recommended to be an impaired provider – chief among them that plaintiff appeared not to be able to perform her job functions fully. Second, it is not clear that being placed on the impaired provider list is an adverse employment action. Plaintiff points to no negative impact on her job or her work as a result of being placed on this list. Plaintiff nakedly states in the complaint that "[r]eferral to the IHPC which could have licensing implications would dissuade a reasonable employee from engaging in protected activity, and Plaintiff reasonably perceived it as a retaliatory measure." Amended Complaint ¶ 82. Without more facts about whether the referral actually had an impact on plaintiff's license, plaintiff's statement is conclusory statement of law that does not need to be taken as true. *See Iqbal*, 556 U.S. at 678.

Plaintiff vaguely states that she was "reprimanded by Captain Cochran for 'missing meetings.' This was factually false." Amened Complaint ¶ 77. She then makes a formulaic recitation of the legal standard. The Court does not have enough information to plausibly conclude that being reprimanded for missing meetings, which plaintiffs admits to refusing to attend, was an act of reprisal. Accordingly, plaintiff has failed to state a claim.

The motion to dismiss is GRANTED.

## CONCLUSION

Accordingly, defendant's motion to dismiss [DE 18] is GRANTED.

SO ORDERED, this $20$ day of July, 2021.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

11

Case 5:21-cv-00100-BO   Document 32   Filed 07/21/22   Page 11 of 11